UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CLIFF LANG and BETSY LANG,
*individually and on behalf of all others
similarly situated*,

                              Plaintiffs,

        v.                                          **DECISION AND ORDER**
                                                    08-CV-31S
FIRST AMERICAN TITLE INSURANCE
COMPANY OF NEW YORK,

                              Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant First American Title Insurance Company of New York's Motion to Dismiss (Docket No. 4) the third and fourth counts of Plaintiffs Cliff and Betsy Lang's complaint, which allege violations of the Real Estate Settlement Procedures Act of 1974 ("RESPA") and New York General Business Law § 349, respectively. For the following reasons, Defendant's motion is granted.

## II. BACKGROUND

Plaintiffs are residents of New York who refinanced their home mortgage loan in 2007. (Complaint, Docket No. 1, ¶¶ 2, 13). Defendant is a New York corporation and a provider of title insurance. (Complaint ¶ 1). When mortgagors seek to refinance an existing mortgage they must purchase title insurance policies, such as those offered by Defendant, for the benefit of the mortgage lender. (Complaint ¶ 7). These policies insure the mortgage lender against defects in the title to the property. (Complaint ¶ 6).

Plaintiffs obtained their original mortgage in 2004. (Complaint ¶ 13). In 2007, when Plaintiffs refinanced their existing mortgage, they purchased a title insurance policy from Defendant. (Complaint ¶ 14). Defendant issued the title insurance with the assistance of subsidiary or independent title agents, who conduct title examinations and issue title commitments before the issuance of an actual policy. (Complaint ¶¶ 8, 14-15). Plaintiffs paid Defendant and the title agent $749.01 for their work. (Complaint ¶ 14).

In New York, title insurers must file their policy rates with the State Superintendent of Insurance for approval. See N.Y. Ins. Law § 2305-06 (McKinney 2006). Once filed and approved, title insurers may not deviate from the rates. See N.Y. Ins. Law § 2314. Defendant's filed rate schedule provides that Defendant will discount the charge for a refinance title insurance policy by 50% if the policy is issued no more than ten years after the mortgagor obtained his or her original loan and the new mortgage is for less than $475,000. (Complaint ¶¶ 11,15).

Plaintiffs allege that they were entitled to the discounted rate because their prior mortgage was less than ten years old and their new refinanced mortgage was for less than $475,000 but did not receive it. (Complaint ¶ 15). Plaintiffs therefore allege that Defendant collected from them an extra $327.01 in violation of the RESPA. (Complaint ¶ 15).

Plaintiffs filed this suit on January 11, 2008, as a putative class action, seeking to represent all persons in New York similarly aggrieved. (Complaint ¶ 1). Plaintiffs plead one federal and three state causes of action: (1) money had and received; (2) unjust enrichment; (3) RESPA § 8(b); and (4) New York General Business Law § 349.

2

(Complaint ¶¶ 33-59). Plaintiffs seek injunctive and declaratory relief, remedies under RESPA, and compensatory damages. (Complaint ¶ 60).

## III. DISCUSSION

### A.    Legal Standard

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P.  8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007).   Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)  ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S.Ct. at 1945 (quoting <u>Twombly</u>, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference

that the defendant is liable for the misconduct charged.  Iqbal, 129 S.Ct. at 1949.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Id. at 1950; Fed. R. Civ. P. 8 (a)(2).  Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  This examination is context specific and requires that the court draw on its judicial experience and common sense.  Iqbal, 129 S.Ct. at 1950.  First, statements that are not entitled to the presumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away.  See Iqbal, 129 S.Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim.  Id.

## B.    RESPA

Section 8(b) of RESPA provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

4

Violations under RESPA § 8(b) generally take one of three forms: (1) "mark-ups," which involve one service provider reselling a product or service of another at a higher price without adding any additional value; (2) fees charged by service providers without providing anything of value in return, or, in the words of RESPA § 8(b), "other than for services actually performed"; and (3) "kickbacks," which are fees that one service provider gives to another "other than for services actually performed." See, e.g., Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 114-15 (2d Cir. 2007) (describing a fee paid by a consumer to a service provider for nothing in return); Kruse v. Wells Fargo Home Mortg., Inc., 383 F.3d 49, 57 (2d Cir. 2004) (describing mark-ups); Krzalic v. Republic Title Corp., 314 F.3d 875, 879 (7th Cir. 2002) (describing kickbacks).

Some courts recognize violations only when the service provider that charged a fee shared that fee with another entity. See Cohen, 498 F.3d at 119-20 (citing circuits that recognize violations only when two parties share a fee); Kruse, 383 F.3d at 57 (describing how some circuits do not recognize mark-ups as violations because mark-ups do not require one entity "to give" and one entity "to receive" fees for which no services were performed). The Second Circuit, however, recognizes that mark-ups are actionable under RESPA § 8(b).  See Cohen, 498 F.3d at 126 ("[W]e determine that HUD reasonably construes RESPA § 8(b) to prohibit 'one service provider' from charging the consumer a fee for which 'no . . . work is done . . . .'"); Kruse, 383 F.3d at 62 ("[W]e accord Chevron deference to HUD with respect to its . . . application of section 8(b) to mark-ups.")

Another type of conduct, "overcharges," occurs when a service provider charges a fee for a product or service that exceeds the reasonable value of that product or

service. <u>Kruse</u>, 383 F.3d at 55. All federal courts of appeals to consider overcharges, including the Second Circuit, have held that overcharges *do not* violate RESPA § 8(b). <u>See</u> <u>Kruse</u>, 383 F.3d at 56; <u>Martinez v. Wells Fargo Mortg, Inc.</u>, 598 F.3d 549, 554 (9th Cir. 2010); <u>Friedman v. Market Street Mortgage</u>, 520 F.3d 1289 (11th Cir. 2008); <u>Santiago v. GMAC Mortgage Grp., Inc.</u>, 417 F.3d 384 (3d Cir. 2005); <u>Haug v. Bank of Am.</u>, 317 F.3d 832 (8th Cir. 2003); <u>Krzalic v. Republic Title Co.</u>, 314 F.3d 875 (7th Cir. 2002); <u>Boulware v. Crossland Mortgage Corp.</u>, 291 F.3d 261 (4th Cir. 2002).

**C.    Plaintiffs' RESPA claims**

Plaintiffs maintain that Defendant improperly charged them a fee without providing anything of value in return and gave a portion of that fee to the title agent. Plaintiffs believe that the plain language of RESPA § 8(b) provides relief, because Defendant "charged fees for which *no* service was provided . . . and then engaged in a prohibited *split* of those fees with a title agent . . . ." Alternatively, Plaintiffs rely on a Department of Housing and Urban Development ("HUD") policy statement ("Policy Statement"), which interprets RESPA § 8(b) to prohibit conduct where "(1) [t]wo or more persons split a fee for settlement services, any portion of which is unearned; or . . . (3) one service provider charges the consumer a fee where no, nominal, or duplicative work is done . . . ." <u>Cohen</u>, 498 F.3d at 114 (quoting Statement of Policy 2001-1, 66 Fed. Reg. 53,052, 53,059 (October 18, 2001) (codified at 24 C.F.R. § 3500.14(c))). For the following reasons, this Court finds Plaintiffs arguments unpersuasive and concludes that they have failed to state a claim for relief under the RESPA.

Plaintiffs' claim requires this Court to interpret RESPA § 8(b), mindful that there is an existing agency interpretation of this statute. Accordingly, this Court must apply the

6

two-step process of statutory construction found in <u>Chevron U.S.A. Inc. v. Natural Res.</u>

<u>Def. Council, Inc.</u>, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

The first step of the process requires this Court to determine whether Congress

has clearly spoken to the issue at hand. <u>Cohen</u>, 498 F.3d at 116. "If the intent of

Congress is clear, that is the end of the matter; for the [C]ourt, as well as the agency,

must give effect to the unambiguously expressed intent of Congress." <u>Cohen</u>, 498 F.3d

at 116 (quoting <u>Chevron</u>, 467 U.S. at 842-43). The inquiry is therefore whether the

statutory text is unambiguous. <u>Cohen</u>, 498 F.3d at 116 (citing <u>Zuni Pub. Sch. Dist. v.</u>

<u>Dep't of Educ.</u>, 550 U.S. 81, 93, 127 S. Ct. 1534, 167 L. Ed. 2d 449 (2007); <u>Robinson v.</u>

<u>Shell Oil Co.</u>, 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997); <u>Daniel v.</u>

<u>Am. Bd. of Emergency Med.</u>, 428 F.3d 408, 423 (2d Cir. 2005)). If so, the inquiry is

over, but if not, this Court next considers canons of statutory construction, then

legislative history. <u>Cohen</u>, 498 F.3d at 116 (quoting <u>Daniel</u>, 428 F.3d at 423).

If, after step one, this Court is unable to conclude that Congress has "directly

addressed the precise question at issue," it must defer to agency interpretation of the

ambiguous statute, if the interpretation is "reasonable." <u>Cohen</u>, 498 F.3d at 116 (quoting

<u>Chevron</u>, 467 U.S. at 843-44).

At issue here is the scope of the following language from RESPA § 8(b),

specifically whether it encompasses overcharges: "any charge . . . other than for

services actually performed."  12 U.S.C. § 2607 (b).  The Second Circuit considered this

language in <u>Kruse</u> and found that it "clearly and unambiguously" prohibits recovery for

overcharges, noting that RESPA § 8(b) does not "impose price controls." 383 F.3d at

56-57. <u>Kruse</u> involved a claim that a mortgage lender charged "as much as twenty-five

times" more for a service than that service cost the lender to perform. Id. at 53. The Second Circuit concluded that "[w]hatever its size, such a fee is 'for' the services rendered by the [service provider] and received by the [consumer]." 383 F.3d at 56.

Other circuit courts have interpreted RESPA § 8(b) under circumstances indistinguishable from Plaintiffs' claim, and have agreed with the Kruse Court's conclusion that charges exceeding the amount allowed under state law are "for" the service provided.  See Arthur v. Ticor Title Ins. Co. of Fla., 569 F.3d 154, 157-58 (4th Cir. 2009) ("Plaintiffs' claim cannot be squared with the plain language of the statute. . . . [T]o accommodate plaintiff's theory of liability, we would have to delete the words "other than" from the statute and add a new provision that bars giving and accepting "excessive fees" for services actually performed."); Hazewood v. Found. Fin. Grp., LLC, 551 F.3d 1223, 1226 (11th Cir. 2008) ("Even if the excess portion of the premium was arguably "unearned" as a matter of [state] law, as a factual matter it was not in exchange for nothing.").

Plaintiffs' claim is that Defendant charged them an "excess" fee for title insurance in violation of state law by failing to apply the "discounted rate" for which Plaintiffs were eligible.  (Complaint ¶¶ 12, 48, 58).  There is no allegation that Defendant failed to provide a service for the fee it charged Plaintiffs, nor do Plaintiffs allege that Defendant's title agents failed to provide a service in exchange for receiving part of the fee.  (See Complaint ¶¶ 1, 8, 14-15).

Recognizing that the circuit courts are in agreement that RESPA § 8(b) does not provide recovery for overcharges, Plaintiffs attempt to distinguish their claim from cases involving "mere overcharge[s]."  Plaintiffs thus divide the fee that they were charged into

8

two parts.   The first portion of the fee corresponds to Defendant's filed rate — the maximum rate allowed under New York law.   The second portion corresponds to the amount charged in excess of the filed rate, which Plaintiffs contend was a fee for which no services were provided.   Thus, Plaintiffs characterize the second portion as a fee that Defendants charged for which no services were performed, rather than as simply an "overcharge" for the services performed.

This Court does not agree with Plaintiffs that an excessive payment for a service performed constitutes a fee "other than for services actually performed."   The types of charges that the Second Circuit has considered "other than for services actually performed" are of a clearly different sort than what is at issue here.   Those charges consist of mark-ups, as in Kruse, and charges for no services at all, as in Cohen.   The Kruse court explained that mark-ups fall within the prohibitions of RESPA § 8(b), because mark-ups involve a service provider charging a fee for another provider's work "without performing any additional services." 383 F.3d at 57. Similarly, the Cohen court explained, in a case involving a $225 "post-closing fee" for which the defendant-mortgage lender allegedly performed no services, that the "focus is not on lenders who overcharge for services actually provided; it is on lenders who charge fees for no services at all." 498 F.3d at 114, 116.

Plaintiffs nonetheless propose that the statutory text contemplates dividing fees into 'earned' and 'unearned' portions, based on RESPA § 8(b)'s reference to "any portion, split, or percentage of any charge." The HUD Policy Statement interpreting RESPA § 8(b) prohibits conduct where "[t]wo or more persons split a fee for settlement services, *any portion of which is unearned*. . . ." Cohen, 498 F.3d at 114 (quoting

Statement of Policy 2001-1, 66 Fed. Reg. 53,052, 53,059 (October 18, 2001) (codified at 24 C.F.R. § 3500.14(c))).  But "portion, split, or percentage," as used in RESPA § 8(b), contemplates a fee, collected by one entity, that may be divided between two or more parties in a sharing arrangement. In other words, this language refers to the act of dividing a fee among multiple parties, not analytically dividing the fee into valid and invalid parts.

The Cohen court extensively analyzed this language, but never once considered that "portion, split, or percentage" could refer to the composition of a fee charged to the customer. See Cohen, 498 F.3d at 115-26. The issue before the Cohen court was whether a service provider could violate RESPA § 8(b) without distributing the fee in question to multiple parties. Id. at 116. Cohen extensively analyzed "portion, split, or percentage" and concluded that it necessarily implies that a RESPA § 8(b) violation occurs only if one service provider gives a portion, split, or percentage of a fee to another person or entity, as opposed to keeping the entire fee itself.  See Cohen, 498 F.3d at 119-20 (discussing circuit courts that have conducted similar analysis of the "portion, split or percentage" language).   Other courts have expressly rejected the argument Plaintiffs advocate, holding that RESPA § 8(b) *does not* allow a court to analytically divide a fee into earned and unearned parts.  See, e.g., Arthur, 569 F.3d at 159-60 (collecting cases).

Plaintiffs' reading of RESPA § 8(b) assumes that Congress intended to provide a federal private right of action for overcharges that violate state law, despite there being circumstances in which no private right of action would exist under state law.  Some state laws regulating insurance rates, including New York's, do not provide private

remedies for violations. <u>See</u> N.Y. Ins. Law § 2320 (McKinney 2006); <u>see, e.g.</u>, <u>Hazewood</u>, 551 F.3d at 1226 (discussing Alabama law); <u>Arthur v. Ticor Title Ins. Co. of Fla.</u>, No. 07-1737, 2008 WL 7854915, at *4 (D. Md. Mar. 11, 2008) (discussing Maryland law).  It does not appear to this Court that Congress intended to provide a federal remedy that would bypass state enforcement schemes.  <u>See Hazewood</u>, 551 F.3d at 1226 ("The notion that Congress intended RESPA § 8(b) to implicitly create a federal remedy for overcharges under state insurance laws-in circumstances when the state itself does not recognize a private right of action, at that-is simply too much to swallow."); <u>accord</u> <u>Arthur</u>, 569 F.3d at 156, 160 ("While the law is not indifferent to the abuses plaintiffs allege, plaintiffs have chosen the wrong statute and the wrong forum in which to press their case."); <u>see</u> <u>Mercado v. Calumet Fed. Sav. & Loan Ass'n</u>, 763 F.2d 269, 272 (7th Cir. 1985) ("Whatever Congress may have meant by § 8, it did not mean to make every violation of a contract a violation of federal law, too.).

Plaintiffs next look to the word "any" in RESPA § 8(b) for support and rely on the <u>Cohen</u> court's interpretation of that word.  In <u>Cohen</u>, the Second Circuit observed that the use of the word "any" in the phrase "any portion, split, or percentage of any charge" in RESPA § 8(b) could indicate "a legislative intent to sweep broadly, prohibiting all unearned fees, however structured."  498 F.3d at 120 (citing <u>United States v. Dauray</u>, 215 F.3d 257, 262 (2d Cir. 2000)). Thus, Plaintiffs assert that their claim should too be swept under RESPA § 8(b). But the <u>Cohen</u> Court was addressing a much different issue — whether a single entity can unilaterally violate RESPA § 8(b) — and was not examining the types of fees that violate RESPA § 8(b).  498 F.3d at 116.

This Court disagrees with Plaintiffs' construction of the statute, and finds that Congress's clear intent with regard to RESPA § 8(b) was to exclude overcharge claims, which is what Plaintiffs allege here, no matter how they try to cloak it.   In addition, numerous other courts have nearly unanimously rejected precisely the same partitioned overcharge claims that Plaintiffs advance here. See, e.g., Arthur, 569 F.3d 154; Hazewood, 551 F.3d 1223; Morrisette v. Novastar Home Mortg., Inc., No. 08-10036, 2008 WL 2610550 (11th Cir. July 3, 2008) (per curiam); Patino v. Lawyers Title Ins. Co., No. 3:06-CV-1479-F, 2010 WL 1222705 (N.D. Tex. Mar. 23, 2010); Hancock v. Chicago Title Ins. Co., 635 F. Supp. 2d 539 (N.D. Tex. 2009); Kingsberry v. Chicago Title Ins. Co., 586 F. Supp. 2d 1242 (W.D. Wash. 2008); Barnett v. Chicago Title Ins. Co., No. 08-652, 2008 WL 3411684 (E.D. Pa. Aug. 11, 2008). But see Hamilton v. First Am. Title Co., 612 F. Supp. 2d 743 (N.D. Tex. 2009); Mims v. Stewart Title Guar. Co., 521 F. Supp. 2d 568 (N.D. Tex. 2007).

Plaintiffs also fail in their attempt to further distinguish their claim. Plaintiffs argue that they allege an "actionable split overcharge[]" rather than the "mere overcharges" that other courts have rejected. See Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 266 (4th Cir. 2002); Huag v. Bank of Am., 317 F.3d 832, 840 (8th Cir. 2003); Krzalic, 314 F.3d at 879. These cases held that a claim under RESPA § 8(b) must allege that a service provider split or shared the challenged fees.[1]  But these cases held that an allegation of fee splitting or sharing between entities was a necessary condition for relief, not necessarily a sufficient one. See Boulware, 291 F.3d at 266, 268 (quoting

---

[1] The Second Circuit does not require such an allegation to advance a claim under RESPA § 8(b). See Cohen, 498 F.3d at 126; Kruse, 383 F.3d at 62.

Mercado, 763 F.2d at 271) ("[Section 8(b)] was designed to prohibit a 'person that renders a settlement service from giving or rebating a portion of the charge to any other person except in return for services actually performed.'"); Huag, 317 F.3d at 836-37 ("Section 8(b) was intended to cover the split or kickback of real estate settlement services fees, not simply overcharges."); Krzalic, 314 F.3d at 879. A claim under RESPA § 8(b) must still allege that a defendant gave or received a fee other than for services actually performed. The cases upon which Plaintiffs rely all involved mark-ups, which, as Kruse indicates, are fees other than for services actually performed. Boulware, 291 F.3d at 264; Huag, 317 F.3d at 834-35; Krzalic, 314 F.3d at 877; see Kruse, 383 F.3d at 57-58.[2]   As this Court has observed, Plaintiffs have not alleged that Defendant split or received a fee that was for something other than for services actually performed. Thus, split or no split, Plaintiffs have not stated a claim under the RESPA. Defendant's motion to dismiss Plaintiffs' third claim will therefore be granted.

**D.    State Claims**

Having disposed of Plaintiffs' federal claim, this Court finds it appropriate to decline to exercise supplemental jurisdiction over Plaintiff's state law claims.   See 28 U.S.C. § 1367(c)(3). The United States Supreme Court has instructed that courts should ordinarily decline to exercise supplemental jurisdiction in the absence of federal claims. See Carnegie-Mellon Univ. v.  Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial, the relevant factors informing the decision of whether to exercise supplemental

---

[2] Confusingly, Boulware and Haug refer to mark-ups as "overcharges." See Patino, 2007 WL 4687748, at *4.

jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims"); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

The Second Circuit shares this view: where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); see also Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well.")

Plaintiffs remaining claims require interpretation of state law alone, and are thus more appropriately determined in state court in the interests of comity and efficiency. Accordingly, this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and they are instead dismissed without prejudice under 28 U.S.C. § 1367(c)(3).


## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' third claim is granted and this Court declines to exercise supplemental jurisdiction over Plaintiffs state claims.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss Plaintiffs' third claim is GRANTED.

FURTHER, that this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, which are hereby DISMISSED under 28 U.S.C. § 1367(c)(3).

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.


Dated:      September 10, 2011
            Buffalo, New York


                                        /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                          Chief Judge
                                   United States District Court